IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                No. 08-10104 B

CARICUS HENDRIX,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
_____

Before the Court is the motion of the Defendant, Caricus Hendrix, to suppress evidence. The Defendant was charged in a two-count indictment with possession and conspiracy to possess with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Hendrix has moved to suppress evidence seized during the search of a vehicle he was driving on the grounds that the officers' actions violated his rights under the Fourth Amendment of the United States Constitution.

At a hearing conducted on August 6, 2009, the Government presented the testimony of Dwayne Stanford and Rodney Weaver. The relevant testimony proffered by these witnesses is as follows. Dwayne Stanford had been employed as a road trooper by the Tennessee Highway Patrol for almost three years on June 22, 2008, the date of Hendrix's arrest. He was conducting routine patrol on Harris Street in Whiteville, Tennessee when at approximately 9:00 p.m. he observed an orange Oldsmobile[1] leaving the parking lot of a Citgo station. The vehicle, which was being

---

[1] Based on the hearing testimony, it appears the Defendant did not own the Oldsmobile. However, the Court determined, at least for purposes of the instant motion, that Hendrix had standing to contest the search of the vehicle.

operated in violation of state law by the Defendant, turned onto U.S. Highway 64. Stanford pulled in behind Hendrix and effected a traffic stop. The officer ran a computer check in order to determine whether there were outstanding warrants for Hendrix, with whom he had no previous encounters. He was informed there were active warrants on file for the Defendant in Hardeman County, Tennessee. At that point, Stanford contacted another trooper, Keith Franks, for assistance, indicating he thought Hendrix might attempt to flee.

Upon the other officer's arrival on the scene, Hendrix was taken into custody. He was handcuffed and searched. According to Stanford's recollection, Franks, who knew the Defendant, asked Hendrix if there was anything illegal in the vehicle. Hendrix replied in the negative and added that "you can search." No written consent to search was given, as highway patrol officers are not required to obtain written consent to search vehicles. Stanford remembered Hendrix seemed nervous throughout the encounter, dropping his cell phone and "kind of fumbling." Stanford secured the Oldsmobile's two passengers while Franks approached the rear of the vehicle and began to search. Stanford observed Franks pulling a white grocery sack from the trunk and walking back to Stanford's cruiser. The witness placed the passengers in Franks' patrol car and joined him. There was a white powdery substance inside the sack. The officers showed the substance to Hendrix, who became very upset and began to scream loudly.

On cross-examination, Stanford testified Hendrix was cooperative throughout the stop and did not resist. The officer was questioned concerning a videotape of the stop, which was admitted as an exhibit at the hearing. He explained that a video automatically begins to record when the lights are activated in the police car. In addition, it can be activated manually by pressing a button on the car's video cassette system or by flipping the officer's belt switch. Audio is also activated by

use of the belt switch. The audio portion of the tape was deactivated several times during the stop, which Stanford attributed to radio traffic on a county radio frequency, which came across on the video as a loud buzz.[2] With respect to the videotape, Stanford recalled hearing Franks ask the Defendant if there was anything illegal in the car but could not remember whether he had heard Franks asking for consent to conduct a vehicle search. Later in cross-examination by defense counsel, Stanford stated that Franks asked the Defendant for permission to search the car and that he responded in the affirmative, but could not recall whether the exchange was actually audible on the tape. The witness did not recall any officer asking for permission to search the trunk specifically. When asked why the officers searched the vehicle, Stanford replied that it was because they requested a search and the Defendant consented. He did not advise the Defendant that he had the right to refuse permission to search the vehicle.

     The videotape, which was played in Court, reflects that, at the time the consent was given, the Defendant was standing at the front of the police car between officers Stanford and Franks. His person was being searched and his belt had been removed. He was being handcuffed. Although there is significant background noise, Franks can be heard asking Hendrix "What am I gonna find?" to which the Defendant, turning his head toward the back of the Oldsmobile, replies "You ain't gonna find nothin'; go ahead and search."

     Weaver, employed by the Bolivar, Tennessee police department and assigned as a drug task force officer to the Drug Enforcement Administration, spoke to the Defendant following his arrest. He reported that Hendrix was in his twenties, had no trouble communicating and was of average

---

[2]The witness testified that there was no request for permission to consent to search made while the audio was not working.

3

intelligence. The Defendant had also been arrested on numerous prior occasions and had been convicted of a drug-trafficking crime on three counts of possession of cocaine with intent to distribute. Moreover, ten days prior to the arrest in this matter, Hendrix was arrested in Georgia and charged with trafficking in cocaine and possessing a stolen weapon. The Defendant also testified on his own behalf for the limited purpose of denying he consented to a search of the Oldsmobile.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001). Evidence obtained by a warrantless search and seizure that violates the Fourth Amendment is inadmissible in a criminal trial. United States v. Wright, 16 F.3d 1429, 1434 (6th Cir.), *cert. denied,* 512 U.S. 1243, 114 S. Ct. 2759, 129 L. Ed. 2d 874 (1994).

The Court begins its analysis of the alleged constitutional violation by noting that Hendrix does not take issue with the lawfulness of the initial stop or of his detention. Rather, his Fourth Amendment challenge focuses solely on his claim that he did not consent to a search of the Oldsmobile. Consent has been recognized as an exception to the warrant requirement. United States v. Campbell, 317 F.3d 597, 608 (6th Cir. 2003) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). Consent must be "voluntary and freely given."

4

United States v. Moon, 513 F.3d 527, 537 (6th Cir.), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2493, 171 L. Ed. 2d 782 (2008) (citing Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)).  "The [G]overnment bears the burden of demonstrating by a preponderance of the evidence, through clear and positive testimony, that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion."  United States v. Canipe, 569 F.3d 597, 602 (6th Cir. 2009), *reh'g denied* (June 30, 2009) (internal citations and quotation marks omitted).  Whether consent was voluntary is to be determined by examining the totality of the circumstances.  United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008), *cert. denied* ___ U.S. ___, 129 S. Ct. 1601, 173 L. Ed. 2d 690 (2009).  Relevant factors to be considered by the court, none of which are dispositive, include the age, intelligence and education of the defendant; whether he understands his constitutional rights; whether he understands his right to refuse consent; the length and nature of his detention; and the use of coercive or punishing conduct by police.  United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999).  "While knowledge of the right to refuse may be considered as a factor, it is not a necessary finding.  A subjective belief of coercion is not sufficient to destroy voluntariness."  McCauley, 548 F.3d at 446 (internal citation omitted).

Upon hearing the testimony and reviewing the videotape, it is clear to the Court that the Defendant expressly gave the officers permission to search the vehicle in response to Franks' query whether there was anything illegal inside.  Thus, he consented to the search and such consent was voluntarily given.  There is no evidence that any of the relevant factors to be considered by the Court weigh in favor of a finding that consent was not voluntary.  While Hendrix was detained and in handcuffs at the time he made the statement to police, this does not militate a finding of involuntariness.  *See* United States v. Chen, No. 07-20067, 2008 WL 659889, at *8 (E.D. Mich. Mar.

5

10, 2008) (collecting cases).

In addition, the search of the trunk area was within the permissible scope of the search. "[T]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. Purcell, 526 F.3d 953, 962 (6th Cir. 2008) (citing Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)). There is nothing to suggest Hendrix gave anything other than permission to conduct a general search. "[W]hen the police receive consent to search for items that can be hidden in different parts of a car, searching those areas is 'objectively reasonable.'" United States v. Jimenez, No. 1:08-cr-101, 2009 WL 2905933, at *15 (E.D. Tenn. Sept. 2, 2009) (citing United States v. Alcantar, 271 F.3d 731, 738 (8th Cir. 1991)). Hendrix was aware the officers were searching for illegal items, which could clearly have been stowed in the trunk. It is perhaps also of some significance that the part of the car to which Hendrix inclined his head in offering permission to search was the trunk area. Finally, the Defendant at no time attempted to withdraw his consent. *See* United States v. Buckingham, 433 F.3d 508, 513 (6th Cir. 2006) ("It is well-settled that the consenting party at any moment may retract his consent").

Based on the foregoing, as the Court finds that the Defendant consented to a search of the vehicle in which the drugs were found, the motion to suppress is DENIED.[3]

IT IS SO ORDERED this 17th day of September, 2009.

            s/ J. DANIEL BREEN
            UNITED STATES DISTRICT JUDGE

---

[3] As a consequence, the Court need not address whether the drugs would have been discovered during an inventory search of the Oldsmobile.